# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6212 | **DATE** | 7/20/2001 |
| **CASE TITLE** | Barry I. Wenger vs. J.F. Graber, Warden | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Report and Recommendation recommending that Wenger's Motion for Release Pending Resolution of Petition for Writ of Habeas Corpus [17-1] be denied is hereby entered of record. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | *3 f Judge* number of notices |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | JUL 2 3 2001 date docketed |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| ✓ | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING 01 JUL 20 PM 3:27 | 52 |
| KMc courtroom deputy's initials | | | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARRY I. WENGER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 00 C 6212 |
| | ) |
| J. F. GRABER, WARDEN, | ) |
| | ) |
| Respondent. | ) |

DOCKETED
JUL 2 3 2001

To: The Honorable Charles R. Norgle, Sr.
United States District Court Judge

## REPORT AND RECOMMENDATION

Nan R. Nolan, United States Magistrate Judge

Petitioner Barry I. Wenger ("Wenger") filed a habeas petition pursuant to 28 U.S.C. § 2241 in the district court challenging his custody. 28 U.S.C. § 2241 allows a federal prisoner to sue a custodian holding him in violation of his constitutional rights or in violation of the laws of the United States. Wenger is presently incarcerated at the Metropolitan Correctional Center in Chicago, Illinois. Wenger has moved for bail pending final resolution of his petition for writ of habeas corpus. This matter has been referred to this Court for ruling on Wenger's Motion for Release Pending Resolution of Petition for Writ of Habeas Corpus. For the following reasons, Wenger's Motion for Release Pending Resolution of Petition for Writ of Habeas Corpus should be denied.

## BACKGROUND

On April 13, 1988, Judge Milton I. Shadur of this district sentenced Wenger to an eight year prison term for mail fraud and access device fraud. Judge Shadur also sentenced Wenger to a five-year term of probation to be served consecutively and ordered him to pay $718,000 in restitution.

On December 21, 1992, Wenger was released on parole from prison, to be supervised until August 21, 1996. The Certificate of Parole states that as of December 21, 1992, 1338 days remained to be served. On August 5, 1996, Probation Officer Rosenthal requested that the Parole Commission issue a parole violation warrant. The United States Parole Commission issued the warrant on August 20, 1996, charging Wenger with bank fraud, theft by check, credit card fraud and association with a person having a criminal record. The warrant was held in abeyance pending the outcome of criminal proceedings.

On July 22, 1997, Probation Officer Rosenthal informed the Commission that Wenger had been taken into federal custody on new criminal charges related to the criminal behavior described on the warrant application. On July 28, 1997, the parole violation warrant was lodged as a detainer. Wenger was indicted on August 20, 1997, in case number 97 C 506, in the Northern District of Illinois and the case was assigned to the Honorable Charles R. Norgle, Sr. Wenger pled guilty. On April 30, 1998, Judge Norgle sentenced Wenger to 33 months imprisonment, followed by five years of supervised release, and ordered him to pay $106,989.73 in restitution.

On May 14, 1998, Judge Shadur declined to revoke Wenger's probation and ordered that Wenger's probation term should end on its original date. Wenger commenced serving his sentence on May 26, 1998 at the Federal Prison Camp in Oxford, Wisconsin. On June 18, 1998, the Parole Commission placed its warrant as a detainer against Wenger at FCI Oxford. On December 16, 1999, as Wenger's thirty-three month sentence was coming to an end, the Parole Commission executed the warrant it had been holding in abeyance. The executed warrant had been manually altered to read that 1339 days remained on Wenger's sentence instead of 1338 days. On January 10, 2000, the Parole Commission conducted a hearing and revoked Wenger's parole on the eight year sentence he started serving on August 23, 1988. On February 4, 2000, Wenger appealed the parole

Commission's revocation of his parole. On April 6, 2000, the Parole Commission denied Wenger's appeal.

## **DISCUSSION**

Only in "exceptional circumstances" should a court admit to bail a prisoner who is appealing from the denial of his challenge to the Parole Commission's refusal to grant an immediate parole. Kramer v. Jenkins, 800 F.2d 708, 709 (7th Cir. 1986). Release on bail in such cases is "tantamount to the judicial grant of temporary parole" and should be limited to "truly exceptional circumstances, where the Commission was acting in a patently lawless fashion." Id.

Wenger has not presented any exceptional circumstances entitling him to bail because he has not demonstrated a likelihood of success on the merits of his habeas petition.[1] In the present motion, Wenger argues that the Parole Commission lacked jurisdiction over him on August 20, 1996 when it issued the parole violator warrant.[2] Wenger breaks his jurisdictional argument into three subarguments which the Court will address in turn.

---

[1] The first inquiry is whether Wenger can raise his present arguments given that he has made repeated attempts to secure federal collateral relief. The parties agree that proceedings under 28 U.S.C. § 2241 are not governed by the gatekeeping function assigned the Court of Appeals by the Antiterrorism and Effective Death Penalty Act. The parties appear to disagree, however, on whether § 2241 petitions are subject to the abuse of the writ doctrine dealt with by the Supreme Court in McCleskey v. Zant, 499 U.S. 467 (1991). The Warden argues that the abuse of the writ doctrine limits Wenger's ability to file successive petitions under § 2241. Wenger maintains that the only statutory limit that relates to petitions under § 2241 is 28 U.S.C. § 2244(a). The Court notes that the Warden has not cited any decision from the Seventh Circuit applying the abuse of the writ doctrine to a § 2241 petition. In any event, the Court need not resolve this issue because the petition should be denied in part and dismissed without prejudice in part for failure to exhaust administrative remedies.

[2] Counsel stipulated at court hearings that for purposes of determining the appropriateness of bail, the Court need only address the likelihood of Wenger's success on the issue of the timeliness of the parole violation warrant even though Wenger's petitions may raise other substantive issues.

Wenger originally argued that his parole expired on August 19, 1996 and thus, the Commission lacked jurisdiction over Wenger on August 20, 1996 when it issued the parole violator warrant. The certificate of parole states that Wenger is to be "paroled on December 21, 1992 and that said prisoner is to remain within the limits of ND Illinois until August 21, 1996." The certificate of parole also states that Wenger was released on December 21, 1992 "with a total of 1,338 days remaining to be served." Wenger correctly points out that 1339 days remained until August 21, 1996 due to the intervention of a leap year, and 1338 days ran only to August 20, 1996.[3]

The Warden admits that the 1338 days on the certificate of parole was an "obvious clerical error." The Warden has also submitted a declaration from Patricia L. Denton, the Case Services Administrator of the United States Parole Commission. Denton explains that the Commission normally relies on the Bureau of Prison's full-term expiration date in listing the termination date of the offender's parole supervision and in determining whether the Commission may issue a timely violator warrant for parole. Wenger has offered no evidence specifically disputing the Warden's assertion that the 1338 days on the certificate of parole was a clerical error which failed to take into account the leap year in 1996, that the full-term expiration date of August 21, 1996 was correct, and that the full-term expiration date controls the Commission's determination of whether it may timely issue a violator warrant for parole.

Wenger is not entitled to benefit from a clerical error on the certificate of parole. It is a well settled rule that a clerical error in a government agency communication does not affect an otherwise valid judgment or sentence pronouncement. United States v. Thomas, 774 F.2d 807, 814 (7th Cir.

---

[3] Wenger advances his termination date to August 19, 1996 by counting the day of his release, December 21, 1992, as the first day of parole. The parties disagree on whether the day of Wenger's release should be counted as the first day of his parole.

-4-

1985); cf. Tijerina v. Thornburgh, 884 F.2d 861, 865 (5th Cir. 1989) (holding "[w]here a clerical error made by a clerk or other data entry assistance creates an inconsistency between the judgment entered by the sentencing judge and the sentence as reflected in the records, the judgment of the court controls."). Here, the warrant as executed was properly corrected to read that 1339 days were remaining on Wenger's sentence. The correction of an error by the Commission should not serve as a basis for habeas relief. Marsh v. Taylor, 925 F.2d 1131, 1133 (9th Cir. 1991) (holding Commissioner's misinterpretation of a non-parolable sentence as parolable was void and petitioner was not entitled to habeas relief after the Commission reversed the initial decision and denied parole).

Wenger also argues that his eight year sentence expired on August 19, 1996 rather than August 21, 1996 because 1996 and 1992 were leap years. Wenger basis his argument in part on the premise that an eight year sentence is 2,920 days (365 x 8). Wenger fails to cite any authority supporting his position that a calendar year is measured in terms of 365 increments for purposes of sentencing. Case law does not support Wenger's methodology. In Yokley v. Belaski, 982 F.2d 423 (10th Cir. 1992), a petitioner who was sentenced to a ten-year term of incarceration argued that his sentence was impermissibly extended by three days because the term of his incarceration included three leap years. The Tenth Circuit rejected petitioner's argument:

> The petitioner was sentenced to a term of years, not days. We hold that a "year," for purposes of sentencing, refers to a calendar year and is defined as a period of twelve months commencing on a specified day of a particular month and terminating as of the same day of the same month in the succeeding year.... The petitioner is unable to provide, and we are unable to locate, any authority which would suggest that we should measure in terms of 365 day increments a sentence that has been imposed in terms of years. For purposes of sentencing, therefore, we conclude that when an inmate is incarcerated for a term of years it makes no difference that a year contains 365 or, in the case of a leap year, 366 days.

Id. at 424-25; see also United States v. Tawab, 984 F.2d 1533 (9th Cir. 1993) (holding the term "year"

-5-

in 18 U.S.C. § 3238 means calendar year, not 365 days).

Wenger began serving his eight year sentence on August 23, 1988. According to Yokley, his eight year sentence would have terminated on August 23, 1996. Deduction of a day's credit for time served for December 3, 1987, the day Wenger was arrested and posted bail, advances the termination date to August 22, 1996. Issuance of the arrest warrant on August 20, 1996 was therefore well within the period of Wenger's original sentence.

Finally, Wenger argues that his sentence was not properly credited with time served. In June 2001, the Bureau of Prisons recalculated Wenger's sentence and determined that Wenger was entitled to five extra days of jail credit time, resulting in an expiration full term date of August 16, 1996 rather than August 21, 1996. On June 15, 2001, Wenger filed a second supplemental memorandum which raised this issue. On July 6, 2001, the Warden filed a response to Wenger's second supplemental memorandum which indicated that the Bureau of Prisons had completed an audit of Wenger's sentence computation and reversed the award of time-served credit on which Wenger based his second supplemental memorandum.

The Warden argues that Wenger has failed to exhaust his administrative remedies with respect to his claim that his sentence was improperly credited with time served and thus, the Court lacks jurisdiction to now consider the claim. A claim concerning the computation of a sentence may be reviewed by a district court through a petition for habeas corpus only after administrative remedies have been exhausted. Clemente v. Allen, 120 F.3d 703, 705 (7th Cir. 1997) (holding administrative remedies must be exhausted prior to filing a habeas petition for relief pursuant to 28 U.S.C. § 2241); United States v. Brumbaugh, 909 F.2d 289 (7th Cir. 1990). Wenger admits that the administrative remedy program available to him to complain of an issue related to any aspect of his confinement is codified in Title 28 of the Code of Federal Regulations Section 542.15. It is undisputed that

Wenger has not challenged the BOP's recent reversal of the award of time-served credit through the BOP's administrative remedy program. Wenger contends, however, that he has already exhausted his administrative remedies because the BOP's July 5, 2001 letter reversing the award of the five extra days of jail credit indicates that the Warden's staff consulted with the supervisors in the Central Office, North Central Regional Office, and their legal staff in determining that the recalculation was in error. Wenger has not cited any case law in which a court has found exhaustion of administrative remedies in similar circumstances. Accordingly, the Court is not willing to find that Wenger has exhausted his administrative remedies simply because the Warden's staff informally consulted with supervisors and legal staff in other BOP offices.

The Court also rejects Wenger's alternative argument that it is futile to require Wenger to exhaust his administrative remedies. Wenger argues that "[i]t is obvious, based on the unequivocal denial of petitioner's request for extra jail credit by the Central Office, the Regional Office and the legal counsel, that relief through the administrative grievance procedure is so unlikely that to require exhaustion in this case serves only as an obstructive formality." Wenger's Memorandum on Exhaustion of Remedies, p. 3. Wenger's claim of a slim likelihood of success through the administrative process does not amount to futility. In Green v. Meese, 875 F.2d 639, 641 (7th Cir. 1989), the Seventh Circuit discussed the importance of exhaustion of administrative remedies in response to an argument of futility:

> [Petitioner argues] that exhaustion would be futile because the higher-ups in the Bureau of Prisons are bound to turn down Greene's remaining request for relief, just as they turned down his other claims. No doubt denial *is* the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion. Lighting may strike; and even if it doesn't, in denying relief the Bureau may give a statement of reasons that is helpful to the district court in considering the merits of the claim.

\* \* \*

The Bureau must be given a chance to clean up its act before the courts are asked to intervene.

Id. Wenger also fails to acknowledge the additional benefit to the Court in allowing development of the factual record by the administrative agencies. This consideration is particularly important in this case where this Court has no factual basis for determining whether the Bureau's present calculation is accurate. Accordingly, Wenger should be required to exhaust his available administrative remedies with respect to his time-served credit argument.

### CONCLUSION

Because Wenger has failed to demonstrate a likelihood of success on the merits of his habeas petition, Wenger's Motion for Release Pending Resolution of Petition for Writ of Habeas Corpus should be denied. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. See Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. Lorentzen v. Anderson Pest Control, 64 F.3d 327, 330 (7th Cir. 1995).

E N T E R:

Nan R. Nolan
United States Magistrate Judge

Dated: July 20, 2001